RAFAEL M. GONZALEZ, JR.
ACTING UNITED STATES ATTORNEY
CHRISTOPHER A. BOOKER, IDAHO STATE BAR NO. 7672
ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF IDAHO
1290 W. MYRTLE ST. SUITE 500
BOISE, ID 83702-7788
TELEPHONE: (208) 334-1211
FACSIMILE:  (208) 334-1413

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>GERMAN LOPEZ-VILLASENOR,<br><br>Defendant. | Case No. 1:20-cr-00102-BLW-1<br><br>**GOVERNMENT'S SENTENCING MEMORANDUM** |

The United States of America, by and through Rafael M. Gonzalez, Jr., United States Attorney, and the undersigned Assistant United States Attorney for the District of Idaho, submits the following memorandum setting forth the government's position at sentencing.

The Defendant is before the Court after being caught with over 30 pounds of methamphetamine, a pound and a half of heroin, and multiple firearms. This is not the Defendant's first federal conviction for drug trafficking, he was previously charged and convicted in 2010 for a conspiracy to distribute methamphetamine. After serving his sentence and being deported to Mexico, the Defendant has again been caught committing the same offense, albeit, this time at a much larger level. The government is requesting that a stronger

**GOVERNMENT'S SENTENCING MEMORANDUM - 1**

message now be sent, and that the Defendant be sentenced to a term of imprisonment of 292 months.

On May 12, 2021, the Defendant was charged by indictment with a single count of Deported Alien Found in the United States, in violation of 8 U.S.C. § 1326(a) & (b). The government has since filed a motion to dismiss this indictment and is requesting that the Court grant that motion at the time of sentencing in this case. *See* ECF No. 5, Case No. 1:21-cr-00142-BLW.

## BACKGROUND

On March 21, 2020, Jerome County detectives began investigating a missing person. During the course of that investigation, Juan Manuel Sanchez-Ponce was identified as a suspect in the disappearance. Detectives eventually located Sanchez-Ponce and arrested him on an unrelated warrant for aggravated assault. In his possession at the time of arrest was the key to a storage unit. Then, on March 27, 2020, an associate of Sanchez-Ponce was interviewed in relation to the disappearance of the missing person and their relationship to Sanchez-Ponce. The associate indicated that he/she had previously been to a storage unit in Jerome with Sanchez-Ponce. After identifying the exact storage unit (S7), detectives obtained a search warrant to look for items related to the missing person investigation.

When detectives served the warrant, and entered S7, they discovered controlled substances. A detective then left to obtain an amended search warrant to include controlled substances while other detectives remained on scene. While waiting, one of the detectives observed a vehicle occupied by an individual named Ruben Robles-Ramos, drive up to the storage units, and then, after seeing law enforcement, turn around to leave. Robles-Ramos was recognized as a suspect in an ongoing investigation for distribution of methamphetamine. Prior

**GOVERNMENT'S SENTENCING MEMORANDUM - 2**

to that date, three controlled-buys had been conducted into Robles-Ramos. Thinking he could have a connection to the storage unit the detective conducted a traffic stop on his vehicle and arrested him for the prior controlled buys.

During the traffic stop, Robles-Ramos admitted to having an ounce of methamphetamine in his vehicle. A search was then conducted, and detectives found in his possession 34 grams (total package weight) methamphetamine along with $2,424, a cell phone, and three separate keys to storage units – one of which fit unit S7. Upon being interviewed he admitted that he was going to the storage unit to drop off drugs in S7. He also indicated that he and Sanchez-Ponce used units S7 and C1 for drug activity. He further allowed a consent search of his residence which revealed 258.54 grams (total package weight) of meth, a scale, and shotgun.

The search warrant was amended and both storage units S7 and C1 were searched. Inside S7 was found a blue suitcase containing five plastic baggies with a blue crystalline substance, later determined to be methamphetamine. Also found in the suitcase was two saran wrapped balls, approximately the size of golf balls. A red drawstring bag contained a .45 cal and 9mm pistol, and ammunition. An identification card for Sanchez-Ponce was also found. The meth weighed 145.14 grams (.320 lbs) and heroin weighed 65.77 grams (.145 lbs).

A search of storage unit C1 revealed a red cooler with bags containing a white crystal-like substance, a black suitcase containing bags of a blue crystal-like substance and packaged foil that was suspected to be heroin, a pump action shotgun, AK-47 rifle and .380 caliber pistol. Detectives also found tires with holes cut in them that appeared to have been used to smuggle narcotics. Approximately 18.335 lbs of blue methamphetamine was found and 16.465 lbs of white methamphetamine, for a total of 34.8 lbs (total package weight) of methamphetamine. 1.57 lbs of heroin was also found.

**GOVERNMENT'S SENTENCING MEMORANDUM - 3**

As detectives continued to investigate they learned the storage units were rented by German Lopez-Villasenor and his wife/girlfriend Rosa Camayo. They then went to Lopez-Villasenor's residence to speak with him. During that visit he consented to a search and detectives found a piece of a tire's sidewall on the floor of the living room. This cutout matched a tire found in the storage units that was believed to have been used to transport narcotics. They also found an ounce of blue colored meth in one of the rooms. This is the same color as some of the meth found in the storage units. And in Lopez-Villasenor's truck was found a key matching the lock for unit C1.

Lopez-Villasenor was then interviewed by detectives but mostly gave denials. A search warrant was obtained for his cell phone. On his phone were photos/videos connecting him to large quantities of meth. One photo showed a hand holding a large chunk of blue crystalline substance, consistent with what was found in the storage units. The hand in the photo appears to be Lopez-Villasenor's based on a freckle above his thumb that matches that seen in the photo. Also, the phone contained multiple family pictures of Lopez-Villasenor further showing it was his phone. Finally, the phone had text messages between himself and the co-defendant Janeth Gonzalez where they discuss the distribution of methamphetamine. The text messages indicated that Lopez-Villasenor was Janeth Gonzalez's supplier. In these texts, they arrange multiple meetings to distribute meth. He would provide meth to her on a front and later be paid back. Some of the messages even reference blue meth. After Lopez-Villasenor was arrested, a confidential informant spoke with Janeth Gonzalez who said a big source of meth had been arrested and she was trying to lay low. This is further indication that Lopez-Villasenor was Janeth Gonzalez's supplier.

## LEGAL ANALYSIS

**GOVERNMENT'S SENTENCING MEMORANDUM - 4**

The Ninth Circuit has set forth a basic framework that district courts should follow in compliance with the Supreme Court's ruling in *United States v. Booker*, 543 U.S. 220 (2005):

(1) Courts are to begin all sentencing proceedings by correctly determining the applicable sentencing guidelines range, precisely as they would have before *Booker*.

(2) Courts should then consider the § 3553(a) factors to decide if they support the sentence suggested by the parties. Courts may not presume that the guidelines range is reasonable. Nor should the guidelines factors be given more or less weight than any other. The guidelines are simply to be treated as one factor among the § 3553(a) factors that are to be taken into account in arriving at an appropriate sentence.

(3) If a court decides that a sentence outside the guidelines is warranted, then it must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.

(4) Courts must explain the selected sentence sufficiently to permit meaningful appellate review.

*United States v. Carty*, 520 F.3d 984, 991-92 (9th Cir. 2008).

## SENTENCING CALCULATION

### I.     Statutory Maximum and Minimum Sentence

The minimum term of imprisonment is 10 years and the maximum term is life. The maximum fine is $10,000,000 and the Court must impose a term of supervised release of at least five years.

### II.    United States Sentencing Guidelines Calculation

"As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007).

#### A.    Offense Level Calculation

The Presentence Investigation Report (PSR), dated May 11, 2021, properly states a base offense level of 38 based upon the Defendant possessing 14,353.91 grams of actual

**GOVERNMENT'S SENTENCING MEMORANDUM - 5**

methamphetamine and 672.37 grams of heroin. A two-level enhancement applies for the firearms found in the storage units that were next to the drugs and accessible by the Defendant. Although during plea negotiations the parties did not anticipate the application of an aggravated role adjustment under § 3B1.1(c), after reviewing the Addendum to the PSR (ECF No. 66-1) the government agrees that this enhancement should apply. The government is requesting the Court grant a two-level reduction for acceptance of responsibility and an additional one level for timely acceptance. This results in a total offense level of 39.

      B.     <u>Criminal History Calculation</u>

The government agrees with the PSR that the Defendant's criminal history score is three, resulting in a criminal history category of II.

      C.     <u>Advisory Guideline Range</u>

The advisory guideline range for a total offense level 39 (after acceptance of responsibility) with a criminal history category of II is 292-365 months.

## IMPOSITION OF SENTENCE

**I.**     <u>**Imposition of a Sentence under 18 U.S.C. § 3553**</u>

      A.     <u>18 U.S.C. § 3553(a) factors</u>

      1.     <u>The nature and circumstances of the offense</u>

The nature and circumstances of the offense demonstrate the Defendant's disregard for the law and danger his actions present to the community. The Defendant was assisting in the distribution of large quantities of methamphetamine and heroin into the community. He was also in possession of multiple firearms. This Court is well aware of the harm these actions cause to the community and the inherent dangers associated with drug trafficking. The Defendant, through his actions, directly contributed to this harm by engaging in large scale drug distribution.

      2.     <u>The history and characteristics of the defendant</u>

**GOVERNMENT'S SENTENCING MEMORANDUM - 6**

Defendant is 30 years of age. He comes before the Court having been convicted in 2010 for drug trafficking, the same type of offense for which he is again before this Court. The Defendant was sentenced to 70 months in federal prison. Upon completing this sentence, he was deported to Mexico on July 21, 2014. In late 2016 or early 2017, the Defendant illegally re-entered the United States. The underlying offense occurred between the end of 2019 and early portion of 2020. Thus, the Defendant was only in the United States a short period of time, and illegally, when he was again engaging in drug trafficking.

There is little in the record to mitigate the Defendant's behavior. The PSR notes that the Defendant was raised on a farm in Mexico. He has seven siblings, most of which still live in Mexico. He reports his father is an alcoholic, but never physically abused him and always provided the basics of life such as electricity and running water. It appears, everything considered, that the Defendant had a positive upbringing. It is the Defendant's choices which have brought him to this moment where he is now facing a lengthy prison sentence.

The Defendant's previous sentence of 70 months confinement was insufficient to get the Defendant's attention. A longer sentence is now appropriate to protect the community and deter future criminal conduct.

>   3.  <u>The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment.</u>

The crime for which the defendant is being sentenced is serious in light of the effect it has to himself and the safety of the community. A sentence of 292 months, at the low-end of the guidelines range, would reflect the seriousness of the offense and provide just punishment.

>   4.  <u>The need for the sentence imposed to afford adequate deterrence and to protect the public.</u>

**GOVERNMENT'S SENTENCING MEMORANDUM - 7**

A sentence of 292 months would serve to deter the defendant from similar conduct and necessarily protect the public during the period of his incarceration.

        5.        <u>The need for the sentence imposed to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner</u>

Defendant explains that he began abusing methamphetamine at the age of 27. His methamphetamine use became a daily occurrence through the commission of the underlying offense in this case. But what is most concerning here is not the Defendant abuse of methamphetamine, but his choice to traffic this drug to others. The Defendant provided large quantities of meth to his co-Defendant, Janeth Gonzalez, who was distributing these drugs throughout the community in Jerome. He further rented to storage units where 13,924.21 grams (30.69 lbs) of actual methamphetamine was recovered. An additional 672.37 grams (1.48 lbs) of heroin was also recovered in additional to multiple firearms. Had these drugs not been intercepted by law enforcement before their distribution, this would have caused significant damage in the community.

It is respectfully recommended that any period of supervised release following his imprisonment include as a condition a requirement to obtain substance abuse treatment.

        6.        <u>The kinds of sentences available</u>

The defendant is not eligible for probation. The maximum sentence by statute that the Court can impose is life imprisonment and a $10,000,000 fine. A special assessment of $100 is mandatory.

        7.        <u>The established sentencing range</u>

The advisory guideline range, after a three-level reduction for the timely acceptance of responsibility, is a total offense level of 39 with a criminal history category II, resulting in a sentence between 292 and 365 months.

**GOVERNMENT'S SENTENCING MEMORANDUM - 8**

8. <u>Any pertinent policy statements</u>

There are no pertinent policy statements applicable to this case.

9. <u>The need to avoid unwarranted sentence disparities</u>

A sentence within the established guidelines range avoids unwarranted sentence disparities.

10. <u>The need to provide restitution to any victims of the offense</u>

There is no restitution being sought.

B. <u>Application of the Guidelines in Imposing a Sentence under 18 U.S.C. § 3553(b)</u>

The government's within-guidelines recommendation is based in part on the fact that such a sentence properly reflects the accumulated wisdom and expertise of the Sentencing Commission, and serves the vital goal of uniformity and fairness in sentencing.  The guidelines, formerly mandatory, now serve as one factor among several that courts must consider in determining an appropriate sentence.  *Kimbrough v. United States*, 552 U.S. 85, 90 (2007).  Nonetheless, "the Guidelines Commission fills an important institutional role:  It has the capacity courts lack to base its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise." *Id.* at 108-09 (internal quotation marks omitted).  Thus, "the Guidelines Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.'" *Id.* (quoting *Rita v. United States*, 551 U.S. 338, 350 (2007)).

The guidelines are the sole means available for assuring some measure of uniformity in sentencing, thereby fulfilling a key congressional goal in adopting the Sentencing Reform Act of 1984.  Reference to the guidelines, while carefully considering the § 3553(a) factors, is the only available means of preventing the disfavored result of basing sentences on the luck of the draw in

**GOVERNMENT'S SENTENCING MEMORANDUM - 9**

judicial assignments. Therefore, "district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." *Gall*, 552 U.S. at 50 n.6.

The guidelines deserve significant respect. The government recognizes that the guidelines are entirely advisory, and that a district court has discretion to vary from an advisory range, subject only to deferential appellate review for reasonableness. A district court, however, must consider the guidelines range, *see* § 3553(a)(4), and is usually well-advised to follow the Sentencing Commission's advice in order to assure fair, proportionate, and uniform sentencing of criminal offenders. Moreover, there are no other § 3553(a) factors in this case which mitigate against imposition of a sentence within that range; to the contrary, the § 3553(a) factors on balance support the imposition of the recommended guidelines sentence. Accordingly, the government recommends a within-guideline sentence of 292 months.

## CONCLUSION

Application of 18 U.S.C. § 3553 supports a sentence of 292 months for the Defendant's commission of the crime of Possession with Intent to Distribute Methamphetamine and Heroin. The government submits that a sentence of 292 months is sufficient, but not greater than necessary, to accomplish the goals of sentencing, and that a lesser sentence is not supported by application of the 18 U.S.C. § 3553(a) factors.

Respectfully submitted this 18th day of May, 2021.

                              RAFAEL M. GONZALEZ, JR.
                              ACTING UNITED STATES ATTORNEY
                              By:

                              */s/ Christopher A. Booker*
                              CHRISTOPHER A. BOOKER
                              Assistant United States Attorney

**GOVERNMENT'S SENTENCING MEMORANDUM - 10**

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 18, 2021, the foregoing **GOVERNMENT'S SENTENCING MEMORANDUM** was electronically filed with the Clerk of the Court using the CM/ECF system, and that a copy was served on the following parties or counsel by:

| | |
|---|---|
| Craig Durham<br>FERGUSON DURHAM, PLLC<br>223 N. 6th Street, Suite 325<br>Boise, Idaho 83702<br>chd@ferusondurham.com | United States Mail, postage prepaid<br>fax<br>ECF filing<br>email |

**GOVERNMENT'S SENTENCING MEMORANDUM - 11**